UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHRISTOPHER STEIN,

                      Petitioner,

        v.
                                                        9:17-CV-0670
DAVID STALLONE,                                         (BKS)

                      Respondent.

_____

APPEARANCES:                              OF COUNSEL:

CHRISTOPHER STEIN
05-B-1667
Petitioner, pro se
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, NY 14556

LETITIA JAMES                             LISA E. FLEISCHMANN, ESQ.
Attorneys for Respondent                  Ass't Attorney General
New York State Attorney General
120 Broadway
New York, NY 10271

BRENDA K. SANNES
United States District Judge

## DECISION and ORDER

## I.     INTRODUCTION

        On June 21, 2017, Petitioner Christopher Stein, proceeding pro se, filed a petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No.

1-1, Petitioner's Exhibits ("Pet. Ex.").  In a Decision and Order filed on July 11, 2017, the

Court directed petitioner to file a written affirmation, explaining why the statute of limitations

should not bar the petition.  Dkt. No. 8, Decision and Order at 6-7, filed July 11, 2017.

On August 21, 2017, petitioner filed an affirmation, with exhibits. Dkt. No. 11, Affirmation ("Aff."); Dkt. No. 11-1, Petitioner's Affirmation Exhibits ("Aff. Ex."). In a Decision and Order filed on September 26, 2017, the Court ordered respondent to file an answer to the petition and provide the Court with the relevant records within ninety days. Dkt. No. 12, Decision and Order at 2, filed Sept. 26, 2017. Respondent filed his answer, supporting memorandum, and state court records on December 29, 2017. Dkt. No. 17, Respondent's Answer; Dkt. No. 17-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. 18, State Court Record Volume I ("SCR I"); Dkt. 18-1, State Court Record Volume II ("SCR II").[1] Petitioner filed a reply/traverse to respondent's Answer on March 19, 2018. Dkt. No. 28, Petitioner's Reply ("Reply").

For the reasons that follow, petitioner's habeas petition is denied and dismissed.

II.     BACKGROUND

A.     **Guilty Plea and Sentencing in 2005**.

On March 17, 2005, Petitioner pled guilty to one charge of first-degree rape, in accordance with a written Plea Memorandum, in satisfaction of an eleven-count indictment. SCR I at 4-5, 320. At the plea hearing, petitioner admitted to the following facts: that on or about October 26, 2014, he forced the victim from her apartment at knife point; that he took her to his apartment for the purpose of raping her; that he did, in fact, force her to have sexual intercourse with him; that in order to compel her to have sexual intercourse with him, he threatened her with the knife; and that there was nothing consensual about the behavior. SCR I at 10-12. While the People reserved the right to recommend the maximum sentence

---

[1] For clarity, citations to petitioner's exhibits and the state court records provided by respondent will refer to the pagination generated by CM/ECF, the Court's electronic filing system.

of twenty-five years, the Court stated that it would not impose a sentence exceeding eighteen years, which carried a term of post-release supervision of five years.  SCR I at 3-5.  In the Plea Memorandum, petitioner waived the right to appeal and the right to bring any post-judgment motions.  SCR I at 260.

Petitioner was sentenced on May 27, 2005, to eighteen years incarceration and five years of post-release supervision.  *Id.* 34-35, 320.  The court also entered a permanent order of protection barring petitioner form having contact of any kind, including third-party contact, with the victim and her family.  *Id.*

**B.      Petitioner's Correspondence and Filings Between 2006 and 2015**.

**1.      Correspondence with Counsel in 2006 Regarding a Notice of Appeal.**

Petitioner did not file a timely notice of appeal.  He states that he requested that defense counsel, Richard Wallace, file a notice of appeal at sentencing.  Aff. at 2; Aff. Ex. B at 31.  Petitioner subsequently wrote to Mr. Wallace asking about the notice of appeal.  Aff. at 2.  In a May 15, 2006, letter, petitioner stated: "I am starting work on my appeal and I need a copy of my notice of appeal or date of filing . . . ."  Aff. Ex. B at 5.  He followed up in a letter dated July 22, 2006, asking "[d]id you also file the papers for appeal.  If so, please forward that information also."  *Id.* at 10.  In a November 11, 2006, letter to Mr. Wallace, petitioner mentioned that he "want[ed] to line everything up in a row prior to starting action, on appeal." *Id.* at 19.  Mr. Wallace did not answer petitioner's questions regarding a notice of appeal, although he responded to other queries.  *Id.* at 7, 18, 22.

**2.      Correspondence with State Courts in 2006 and 2007 Regarding a Notice of Appeal.**

Petitioner wrote to the New York Supreme Court, Appellate Division, Third Department on June 19, 2006, for information regarding the notice of appeal. Aff. Ex. D at 40. On July 11, 2006, the Third Department responded that it had no record that a notice of appeal was filed in his case. *Id.* Petitioner subsequently sought to file a direct appeal. On November 2, 2006, Petitioner filed a "Motion for Transcripts and Records, not part of the Record," Aff. at 7, attempting to obtain the transcripts from the Tompkins County Court proceedings "so he might possibly look into his appeal," *id.*[2] He also filed for poor person's relief to appeal his conviction. Aff. Ex. D at 36. The trial judge denied the motion on November 28, 2006, because petitioner had not filed a notice of appeal and his motion should have been brought in the Third Department. Aff. at 7; Aff. Ex. D at 37. Petitioner's motion to renew and reargue was denied on February 22, 2007. Aff. at 7; Aff. Ex. D at 38-39. Petitioner sought to appeal the trial judge's decision to the Third Department, Aff. Ex. D at 41, but was informed by letter dated February 28, 2007, from the Third Department that a timely notice of appeal was required and that none had been filed in his case, *id.* at 42.

### 3. Petitioner's Correspondence with Counsel Regarding His Case File.

Petitioner also corresponded with Mr. Wallace during this period regarding his criminal case file. His May 15, 2006, letter to counsel stated that he "need[ed] to ask for copies of [his] file," Aff. Ex. B at 5; *see also* Aff. at 6, because "while at Attica Correctional Facility all [his] paperwork was destroyed," Aff. Ex. B at 5. On June 19, 2006, petitioner instructed Mr.

---

[2] Petitioner eventually attempted to obtain a copy of the transcript of his arraignment from the Tompkins County Court and the court reporter. On June 6, 2011, he sent a letter to the Chief Clerk of the Tompkins County Court requesting the transcript. Aff. Ex. H at 53. Three years later, on August 5, 2014, he again wrote to the court clerk asking the cost of obtaining the transcripts. *Id.* at 54. He also wrote to the court reporter on September 29, 2014, inquiring about the cost of the transcripts. *Id.* at 55. Thereafter, petitioner sent letters to both the Clerk of the Third Department and the Chief Clerk of the Tompkins County Court, on March 5, 2015, and April 22, 2015, respectively, to complain about the lack of response from the court reporter. *Id.* at 56-58.

Wallace to "immediately forward the entire file . . . ." *Id.* at 6. Counsel responded on July 11, 2006, that petitioner had "asked [him] to get [his] file to Attorney Thomas Kheel and transmit to him the entire file." *Id.* at 7. Mr. Wallace enclosed a copy of the release petitioner signed and receipt for the file signed by Mr. Kheel. *Id.*[3]

Petitioner wrote to Mr. Wallace again on July 22, 2006, "asking again for copies of [his] files so [he] may prepare [his] defense in this civil suit and also for [his] future appeal." Ex. B at 10. In addition, petitioner wrote several letters to Mr. Kheel seeking his file. *Id.* at 8-9, 12-13, 15. On October 16, 2006, petitioner sent another letter to trial counsel demanding that counsel send him the file. *Id.* at 14. That same day, Mr. Kheel returned petitioner's file to petitioner's attorney. *Id.* at 16. Mr. Wallace responded on October 24, 2006, that he had just gotten the file back and was forwarding it to petitioner. *Id.* at 18; *see also id.* at 22.

Even after receiving his file, petitioner, apparently believing that some of it was missing, continued to write to both attorneys. Aff. Ex. B at 19-20, 22. In a November 11, 2006, letter, petitioner told Mr. Wallace that "[t]here is something going on with the number of pages . . . ." *Id.* at 19. Petitioner also wrote to Mr. Kheel on November 11, 2006, who responded on November 17, 2006, that he suspected, but could not prove, that the file he received was incomplete. *Id.* at 20. On November 29, 2006, Mr. Wallace informed petitioner

---

[3] Mr. Kheel was the attorney who represented petitioner's cousin in a civil suit filed by the victim, her roommates, and their landlord against petitioner and his cousin arising from the criminal matter. Aff. at 5-6; Aff. Ex. B at 8; *see also* R. Mem. at 14. Petitioner was served with papers regarding the civil action at Attica Correctional Facility, but asserts that interference from some correctional officers and the destruction of his legal papers prevented him from filing an answer to the civil complaint until he was transferred to Clinton Correctional Facility in February of 2006. *Id.* By then, petitioner's answer was late and the court defaulted him. *Id.* Petitioner states that he subsequently attempted to file a countersuit in the civil action, but the civil court would not entertain the motion because petitioner had previously been defaulted. Aff. at 7. The civil litigation ended in August, 2008, when the court granted summary judgment to the remaining defendants and dismissed the complaint. *Id.* at 6; Aff. Ex. B at 11; SCR I at 43-44.

that "if there is something going on with the number of pages, [he] would have no way of helping [petitioner] figure that out." *Id.* at 22. Mr. Wallace's November 29, 2006, response is the last correspondence between petitioner and counsel in the record until August 25, 2014, when petitioner, preparing to file his post-conviction motions, wrote to defense counsel seeking information regarding actions counsel took, or did not take, during his representation of petitioner in the criminal case. *Id.* at 31.

### 4. Petitioner's FOIL Requests and Article 78 Proceedings.

Between 2006 and 2013, petitioner filed Freedom of Information Law ("FOIL"), N.Y. Pub. Off. Law § 89(6), requests with various entities, seeking evidence regarding petitioner's arrest and interrogation as well as the investigation that was supposed to have taken place after the crime. Aff. at 7. The first FOIL request, for records pertaining to his residence and arrest, appears to have been made to the New York State Police on November 18, 2006. Aff. Ex. F at 49; SCR I at 176. In a December 29, 2006, letter, the Records Access Officer responded that "a diligent search of our files failed to locate any records responsive to your request." Aff. Ex. F. at 49. There is also evidence of an early request to the Tompkins County District Attorney's Office for an "unredacted" copy of the videotape of his October 26, 2004, arrest and other documents. SCR I at 84, 175. Petitioner states that the District Attorney's Office sent him "838 pages of documents (many were duplicates), plus a redacted D.V.D. of the interrogation/confession . . . ." *Id.* at 175-76. Petitioner also sought any "unredacted" audio or video recordings of his October 26, 2004, interrogation and other documents from the Ithaca Police Department, first in September, 2008, and again in January, 2011. *Id.* at 58, 61, 175. With respect to the first request, the City Attorney's Office

responded that the Ithaca Police Department had reported that "after a diligent search, no documents were found that [were] responsive to your request." *Id.* at 58; *see also id.* at 176. The subsequent request was disregarded as being duplicative of the first. *Id.* at 58. On August 20, 2013, petitioner requested a number of documents relating to his arrest from the City of Ithaca. *Id.* at 84. The next day, he requested the same records from the Tompkins County Sheriff's Office. *Id.* The City Attorney's Office responded that records responsive to petitioner's request were not available or had previously been provided to him pursuant to his 2006 FOIL request. *Id.* The Tompkins County Sheriff's Office informed petitioner that after searching its records, it found no records that matched his requests. *Id.* at 85.

After his FOIL requests were unsuccessful, petitioner turned to the courts for assistance. Aff. at 7-9. Petitioner first filed an Article 78 motion, N.Y. Pub. Off. Law § 89(4)(b), in the Clinton County Court against Tompkins County and its the District Attorney and Sheriff; the City of Ithaca and the Chief of its Police Department; and Cornell University. *Id.* at 8. The motion was dismissed on March 2, 2007, because the court found that petitioner was not a resident of Clinton County. *Id.* Petitioner provides no further details regarding this motion. *See id.*

Petitioner also filed an Article 78 motion against the Ithaca Police Department and unnamed Ithaca FOIL officers in the Tompkins County Court on April 28, 2011. Aff. at 8-9; Pet. Ex. 4 at 6; SCR I at 60, 176. The court found that the respondents had demonstrated that they did not possess the DVD/videotape petitioner sought and had performed a diligent

search for the material requested by petitioner. Pet. Ex. 4 at 8; SCR I at 62.[4] The court

further stated that petitioner had not come forward with evidence that the requested

DVD/videotape was in the possession of the City of Ithaca. Aff. Ex. 4 at 8; SCR I at 62. The

court denied relief and dismissed the motion on August 3, 2011. Pet. Ex. 4 at 8; SCR I at 62,

176.

Petitioner next filed an Article 78 motion against the New York State Police in Albany

County Court on November 26, 2013, Aff. at 9; SCR I at 78-81, 177. The county court

determined that the respondent had met its burden to establish that no additional records,

beyond those already turned over to petitioner, could be located and that petitioner had failed

to meet his burden of articulating a factual basis to support his contention that such

documents existed and were within the respondent's control. SCR I at 80-81. On April 30,

2014, the court denied the motion as moot. Aff. at 9; SCR I at 81.

Finally, in February, 2014, petitioner filed an Article 78 motion against the Ithaca

Police Department and the Tompkins County Sheriff's Department in Delaware County. Aff.

at 9; SCR I at 83-87, 177-78. The court stated that it could not find "that the agencies acted

arbitrarily or capriciously in not providing records if those records [did] not exist or [were] not

in their possession," SCR I at 85-86, and that the motion failed to state a cause of action, *id.*

at 86. Accordingly, on May 28, 2014, the Delaware County Court denied the motion. *Id.* at

---

[4] Lieutenant Christopher Townsend of the Ithaca Police Department submitted an affidavit stating that he "checked the evidence custody documents concerning this case," Aff. Ex. E at 46; that the "evidence custody documents indicate that the tape was given to the Tompkins County District Attorney's Office," *id.* at 47; and that there was "no documentation that indicates the video tape was ever returned to Ithaca Police Department custody," *id.*

According to petitioner, he received a copy of the video in his case file from the Tompkins County District Attorney's Office in March, 2011. Aff. Ex. E at 45. The secretary's letter noted that she had no other tape and was not aware of the existence of another. *Id.*

8

86-87; 178.[5]

## C.    September 2015 Motion to Vacate

On or about September 8, 2015, petitioner filed a pro se motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.10(1) in the trial court.  Aff. at 10; Pet. Ex. 1 at 1; SCR I at 320.  Petitioner claimed violation of his rights to due process, a fair trial, and counsel under the Fifth and Fourteenth Amendments to the United States Constitution and N.Y. Const. Art. 1, § 6.  Pet. at 3; SCR I at 185.  Specifically, petitioner alleged police misconduct, judicial misconduct, prosecutorial misconduct, and ineffective assistance of counsel.  Pet. at 3; Aff. at 10; SCR I at 185-231.  Petitioner also asserted that his guilty plea was not knowing, voluntary, and intelligent.  Pet. at 3; SCR I at 232-39.  In addition, petitioner sought recusal of the trial judge.  Pet. at 3; Pet. Ex. 1 at 1; SCR I at 320.  The People opposed the motions.  Pet. Ex. 1 at 1; SCR I at 241-58.  Petitioner then filed a reply to the People's opposition.  Pet. Ex. 1 at 1; SCR I at 311-19.

The Tompkins County Court denied petitioner's motion in a Decision and Order dated February 3, 2016.  Pet. Ex. 1 at 3; SCR I at 320.  The court stated:

> [Petitioner's] 440 motion recites a litany of errors arising from the bias of the trial court and the alleged conspiracy of the judge and his assigned attorney, to wit: duress, misrepresentation, fraud, ineffective assistance of counsel, denial of due process and failure to disclose exculpatory evidence, among others.
>
> In support of the motions, [petitioner] provides only his own affidavit, together with numerous exhibits, many of which are letters and decisions from collateral proceedings providing no support for the requested relief.

Pet. Ex. 1 at 1-2; SCR I at 320-21.  The court concluded:

---

[5] Petitioner had previously moved to consolidate the Albany County and Delaware County proceedings. SCR I at 89.  The motion to consolidate was denied on June 20, 2014.  *Id.* 89-90.

9

> Here, the sole basis for these motions is [petitioner]'s own self serving affidavit. He presents not a scintilla of actual evidence in support of his irrational belief that the court and his lawyer engaged in a conspiracy to thwart his constitutional rights. By entering his guilty plea as agreed upon, [petitioner] received a favorable result of a lesser sentence than permitted under the law. As evidenced by the transcripts of the plea allocution and sentencing hearing, [petitioner] voluntarily admitted the commission of every element of the crime. Although he now asserts his attorney failed to provide effective representation, nothing in the record or in [petitioner's] papers lends any credibility to that claim. In fact, it is apparent that defense counsel provided [petitioner] with zealous representation by negotiating a favorable plea agreement and by obtaining a detailed, independent sentencing report in an effort to present the court with mitigating factors to reduce the potential sentence.

Pet. Ex. 1 at 2-3; SCR I at 321-22. The court denied petitioner's motions in their entirety.

Pet. Ex. 1 at 1, 3; SCR I at 320, 322.

Petitioner filed an application for leave to appeal the denial of the 440 motion, SCR I at 324, but on April 25, 2016, the Third Department denied the request, *id.* at 323. Petitioner next sought permission to appeal from the New York Court of Appeals. SCR I at 77-87. On July 5, 2016, the Court of Appeals denied the application. *Id.* at 76.

## III.    THE PRESENT PETITION

Petitioner filed this petition on June 21, 2017, alleging that the police, the trial judge, and the prosecutor engaged in misconduct; that he received ineffective assistance of counsel; and that his plea was not knowing, voluntary, and intelligent. Pet. at 5-12. Specifically, petitioner asserts that the police ignored his requests for counsel during their initial interrogation and only provided a redacted videotape of the interrogation containing his inculpatory statement; that the judge had a conflict of interest with petitioner's attorney; that the prosecutor committed misconduct by only disclosing the "deleted version" of the videotaped interrogation; that his attorney was ineffective in, *inter alia*, making the wrong

10

arguments at the suppression hearing and failing "to file a notice of appeal as requested;" and that his guilty plea was not knowing and voluntary. Pet. at 5-12. Before the Court may consider the merits of his claims, however, it must address the threshold question of the timeliness of the Petition.[6] *See, e.g.*, *Perez v. United States*, 502 F. Supp. 2d 301, 304 (N.D.N.Y. 2006).

## IV.     DISCUSSION

### A.     The Petition Is Untimely.

The AEDPA established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[7] In New York, that period is thirty days. *Gonzalez*, 565 U.S. at 150; *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (citing N.Y. CPL § 460.10(1)). The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009). The tolling provision "excludes

---

[6] In its September 26, 2017, Decision and Order, the Court deferred ruling on the timeliness issue until respondent had an opportunity to respond to the petition and affirmation. Dkt. No. 12, Decision and Order at 1-2, filed September 26, 2017.

[7] Other dates which may trigger running of the limitations period are: the date on which an impediment to filing an application created by state action in violation of the U.S. Constitution or laws is removed, if the applicant was prevented from filing by such action; the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right has been newly recognized and made retroactively applicable to cases on collateral review; and the date on which the factual predicate of the claim(s) presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B)-(D).

time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam); *Rodriguez v. Smith*, No. 9:14-CV-1274 (BKS/ATB), 2015 WL 5968837, at *6 (N.D.N.Y. Oct. 13, 2015).

Petitioner was sentenced on May 27, 2005. SCR I at 14, 320. He had thirty days in which to file a notice of appeal. N.Y. Crim. Proc. Law 460.10(1). Petitioner did not do so. Therefore, the time for filing a notice of appeal expired, petitioner's judgment became final, and the one-year statute of limitations under AEDPA began to run on June 27, 2005.[8] *See* 28 U.S.C. 2244(d)(1)(A); *Craig v. Connolly*, No. 9:15-CV-384 (GLS/CFH), 2016 WL 7993378, at *3 (N.D.N.Y. Dec. 7, 2016) (citing *Bethea*, 293 F.3d at 578). Accordingly, pursuant to 2244(d)(1)(A), petitioner had until June 27, 2006, to file a timely habeas petition under 2254, unless one of the above exceptions applies.

Respondent notes that "petitioner contends that his counsel was ineffective for not filing a notice of appeal. Thus, the limitations period began to run on the date on which petitioner, exercising due diligence, reasonably should have discovered that counsel had failed to file a notice of appeal." R. Mem. at 26 (citing 28 U.S.C. 2244(d)(1)(D); *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). As Respondent observes, petitioner was informed that no notice of appeal had been filed on July 11, 2006, November 28, 2006, and February 28, 2007. *Id.*

According the petitioner the full benefit of the doubt, as Respondent argues, petitioner had a year from February 28, 2007, in which to file his Petition. *Id.* at 23-24. Petitioner did

---

[8] The thirty-day period for filing a direct appeal expired on June 26, 2005, which was a Sunday. *See* Fed. R. Civ. P. 6(a)(1)(C).

not file the instant Petition until June 21, 2017, more than nine years after the statutory limitation period had expired. *See* 28 U.S.C. 2244(d)(1)(D). Therefore, the Petition is untimely.

**B.    Petitioner Has Failed to Demonstrate That He Is Entitled to Equitable Tolling**.

**1.    Equitable Tolling**

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing, *inter alia*, *Smith* 208 F.3d at 17). To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). To make the requisite showing, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" *Rodriguez*, 2015 WL 5968837, at *6 (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001)). Further, a petitioner must establish that he "acted with reasonable diligence throughout the period he seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). "The link of causation is broken if the person seeking equitable tolling has not exercised reasonable diligence." *Rodriguez,* 2015 WL 5968837, at *6 (citing *Barrett v. United States*, 961 F. Supp. 2d 403, 408 (D. Conn. 2013)); *see also Hizbullahankhamon,* 255 F.3d at 75; (noting that causal relationship cannot be demonstrated "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

### 2. Petitioner has not demonstrated that extraordinary circumstances prevented timely filing of the Petition.

Petitioner does not dispute that the petition is untimely, nor does he contend that he is entitled to statutory tolling pursuant to § 2244(d)(2).[9] Instead, he argues that the statute of limitations should be equitably tolled in this case due to "extraordinary circumstances." Aff. at 1-2. Petitioner points to several alleged failures by his trial counsel. *Id.* at 2. In addition, petitioner contends that counsel and various agencies withheld documents and evidence, thus preventing petitioner from offering them as proof of petitioner's claims in any appeal or post-conviction action. *Id.* However, Petitioner has not shown how any of these circumstances are "extraordinary" or prevented him from filing a timely petition. *See Trombley v. Bosco*, No. 9:14-CV-01118 (JKS), 2016 WL 6238576, at *4 (N.D.N.Y. Oct. 25, 2016) ("The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." (citing *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2001))). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011).

### a. Trial counsel's alleged failures in 2005 and 2006 did not prevent petitioner from timely filing a Petition after February 2008.

Although the Second Circuit has held that "an attorney's conduct, if it is sufficiently

---

[9] Statutory tolling would not apply in this case because petitioner had no "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . pending . . . ." 28 U.S.C. § 2244((d)(2). Petitioner did not file his 440 motion to vacate in the Tompkins County Court until September 8, 2015, more than seven years after the AEDPA limitation period had expired; therefore, that motion cannot serve to "revive the expired statute of limitations." *Gillard v. Sticht* No. 9:16-CV-513 (MAD/ATB), 2017 WL 318848, at *3 (N.D.N.Y. Jan. 23, 2017) (citations omitted). The FOIL requests and related Article 78 petitions that petitioner filed between 2006 and 2014 seeking documents do not toll the limitations period. *See Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001).

14

egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA," there is no such error alleged here. *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003). Here, petitioner alleges that his trial counsel: (1) failed to file a notice of appeal, despite petitioner's alleged request at sentencing that he file such notice; (2) failed to answer petitioner's letters asking if and when he filed the notice of appeal; and (3) failed to turn over petitioner's case file for over a year and a half despite numerous letters from petitioner requesting said file. Aff. at 2. Assuming, however, that the limitations period began to run on February 28, 2007, when petitioner knew that no appeal had been filed, and expired on February 28, 2008, this alleged conduct by trial counsel in 2006 did not prevent petitioner from timely filing a petition.

Petitioner has not shown how trial counsel's failure to file a notice of appeal in 2005 prevented him from filing for collateral relief, federal or state, until 2015, well after the statute of limitations expired in 2008. *Cf. Craig v. Connolly*, No. 9:15-CV-384 (GLS/CFH), 2016 WL 7993378 (N.D.N.Y. Dec. 7, 2016) ("Even assuming that petitioner's attorney failed to file the notice of appeal, this would bear no causal connection to petitioner's independent failure to timely file a habeas petition, and, therefore, would not constitute an 'extraordinary circumstance.'"). Nor does trial counsel's unresponsiveness to petitioner's 2006 letters regarding the notice of appeal warrant equitable tolling in 2008. There is no correspondence between petitioner and his trial counsel in the record from February 28, 2007, to February 28, 2008, the period during which the statute of limitations was running. Other than petitioner's August 26, 2014, inquiry seeking information about what actions Mr. Wallace's took during his handling of the case, Aff. Ex. B at 31-32, the last communication between them in the record is a letter from Mr. Wallace to petitioner dated November 29, 2006, *id.* at 22, before

the limitation period began to run. Trial counsel's failure to respond to petitioner's 2014 letter clearly does not support equitable tolling from a limitations period that expired on February 28, 2008.

Similarly, trial counsel's "failure" to turn over petitioner's case file "for over 1 ½ years after petitioner's proceedings had ended . . . ," Aff. at 2, did not prevent petitioner from filing a timely petition for habeas corpus relief in this Court. Mr. Wallace explained to petitioner on July 11, 2006, that, per petitioner's request, he had given the file to counsel for petitioner's cousin because of the pending civil suit related to the criminal case. Aff. Ex. B at 7, 18. As soon as the civil proceedings concluded and the file was returned to petitioner's counsel, he turned it over to petitioner on or about October 24, 2006. *Id.* at 18. Thus, petitioner was already in possession of his case file before the statute of limitations began to run on February 28, 2007, and well before the expiration of the limitation period a year later.[10]

### b. The alleged withholding of documents did not prevent petitioner from timely filing his Petition.

"An ordinary lack of access or inability to obtain documents does not warrant equitable tolling." *See Williams*, 2011 WL 2671511, at *5 (citing *Padilla v. United States*, No. 1:02 Civ. 1142, 2002 WL 31571733, at *4 (S.D.N.Y. Nov. 19, 2002) ("Even if [petitioner] did not have all the necessary materials or experienced a delay in obtaining them, those are not extraordinary circumstances warranting equitable tolling.") (alteration in original)); *Davis*, 2000 WL 973752, at *2. "Such denial of access to necessary papers typically requires 'some event [that] effectively prohibits the petitioner from pursuing habeas . . . .'" *Id.* (quoting

---

[10] Petitioner also asserts that due to interference from some correctional officers, he could not start any legal work until his transfer from Attica C. F. to Clinton C.F. Aff. at 5-6. But that transfer occurred in February, 2006, *id.* at 6, a full year before the statute of limitations began to run.

16

*Raynor v. Dufrain*, 28 F.Supp. 2d 896, 900 (S.D.N.Y. 1999)) (alterations in original).

Here, petitioner claims that "the withholding of documents/evidence by various agencies, and trial counsel, prevent[ed] petitioner from offering them as proof of [his claims] in any appeal or post-convictions . . . ." Aff. at 2; *see also id.* at 10 ("Without these requested (and they were requested in discovery also) documents, these entities know petitioner cannot prove his accusations . . . .").[11] Petitioner sought, inter alia, the original recording of his videotaped confession, the chain of custody for the recording and the name of the equipment operator who recorded the confession. Aff. at 7. Petitioner suggests that he could not timely file a state or federal petition without these materials. *See id.* at 10 ("This is the reason why it took petitioner so long to file any of his post-conviction motions – no one would turn over the documents."). While petitioner appears to argue that the materials in question were intentionally kept from him, Aff. at 10, the key is "some event [that] effectively prohibits the petitioner from pursuing habeas . . .," *Williams*, 2011 WL 2671511, at *5) (alterations in original), not from pursuing documents.

This circumstance did not prevent petitioner from filing a timely petition. Rather, "[i]f a prisoner believes he is entitled to discovery in aid of a state or federal collateral attack, his remedy is to seek such relief from the court where a properly filed and timely collateral attack on his conviction is pending." *Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001). Thus, all of the materials petitioner alleges were withheld could have been sought after a timely federal petition was filed. *See id; see also Davis v. McCoy*, No. 1:00 CIV. 1681, 2000 WL

---

[11] To the extent petitioner contends that counsel failed to provide documents other than the case file, the only one he identifies is "a copy of probation's pre-sentence investigation." Aff. Ex. B at 5. As noted above, petitioner received his case file on or about October 24, 2006, *id.* at 18, and he does not argue that he needed the pre-sentence investigation report in order to file his state and federal post-conviction motions.

973752, at *2 (S.D.N.Y. July 14, 2000) (finding that petitioner's inability to obtain necessary court papers for more than two years was not an extraordinary circumstance); *cf. Jenkins v. Greene*, 630 F.3d 298 (2d Cir. 2010) (holding that requirement of affidavit from counsel or explanation for inability to present affidavit, in support of an ineffective assistance of counsel claim, is not an extraordinary circumstance warranting tolling; "petitioner could have timely filed . . . accompanied by a sworn statement why he was unable to obtain the attorney's affidavit).

In sum, petitioner has not demonstrated any "extraordinary circumstances" following the February 2008 expiration of the limitations period, much less any such circumstance that prevented him from filing a timely habeas petition.

**2.    Petitioner has not demonstrated that he acted with reasonable diligence.**

Nor has petitioner established that he acted "with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file *after the extraordinary circumstances began*, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)); *see Pace*, 544 U.S. at 419 ("Under long-established principles, petitioner's lack of diligence precludes equity's operation."); *Hizbullahankhamon,* 255 F.3d at 75 . This Court has stated that "[a] period of delay greater than one year normally does not demonstrate due diligence." *Rodriguez*, 2015 WL 5968837, at *7 (citing *Morton v. Ercole,* No. 1:08-Civ-252, 2010 WL 890036, at *6 (S.D.N.Y. Mar. 10, 2010)).

18

Petitioner includes as exhibits letters he sent to counsel regarding the notice of appeal and his case file; correspondence with and/or filings in the Tompkins County Court and Third Department; FOIL requests for documents and other evidence; and Article 78 proceedings when his FOIL requests proved unsuccessful. *See* Aff. Ex. B, D-F, H. However, petitioner's pursuit of his legal rights shows that no extraordinary circumstances stood in the way of his filing a timely habeas petition in this Court. "[C]ourts have regularly held that a petitioner is not entitled to equitable tolling when his conduct indicates that he was able to investigate and pursue other legal avenues during the time period at issue." *De Los Santos v. Ercole*, No. 07-CV-7569, 2013 WL 1189474, at *7 (S.D.N.Y. Mar. 22, 2013). Despite having received his case file from trial counsel in October 2006 and having learned that no notice of appeal had been filed as of February 28, 2007, petitioner waited until September 8, 2015, more than seven years after the federal statute of limitation had expired, to file his § 440.10 motion in Thompkins County Court. Aff. Ex. 1 at 1; CR I 320. Only after that motion was denied on February 3, 2016, Aff. Ex, 1 at 3; SCR I at 322, and the Third Department denied permission to appeal, SCR I at 323, did petitioner file the instant habeas petition, on June 21, 2017. By this point, more than eleven years had elapsed since petitioner claimed to have been able to start his legal work; over ten years had passed since he was last notified that no notice of appeal had been filed, triggering the running of the statute of limitations; and nine years had gone by since the AEDPA limitation period expired. "Petitioner is utterly unable to account for th[is] significant and substantial delay[ ]." *LaChance v. Cunningham,* No. 9:09-CV-901, 2009 WL 81222, at *6 (N.D.N.Y. Jan. 9, 2009); *see id.* ("Even if he was initially provided with incorrect advice concerning the waiver of appellate rights contained in his plea agreement, Petitioner has not offered an adequate explanation as to . . . why he waited *nearly a year*

after the conclusion of the state court collateral proceedings before filing the instant action."); *Cf. Holland*, 560 U.S. at 653 (finding petitioner acted diligently where petitioner filed pro se habeas petition the same day he learned, through his own efforts, that his state appeal had been denied); *Diaz*, 515 F.3d at 155 (finding petitioner acted diligently when he filed federal habeas petition the day after receiving, following his inquiry, unreasonably delayed notice of court order denying his application for leave to appeal).

### C. Petitioner Has Not Made a Credible Showing of Actual Innocence.

#### 1. Actual Innocence

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). It is important to stress that "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence." *Hyman*, 927 F.3d at 656 (citing *Schlup v. Delo*, 513 U.S. 298, 315 (1995)) (internal quotation marks omitted); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case.") (internal quotation marks omitted). "The petitioner's burden in making a gateway showing of actual innocence is deliberately demanding." *Hyman*, 927 F.3d at 656 (citing cases). "To be credible, such a claim requires petitioner to support his allegations of

constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Rivas v. Fischer*, 687 F.3d 514, 518 (2d Cir. 2012); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327);[12] *see also Doe*, 391 F.3d at 160-62.

"The standard's demand for evidence *of innocence* references factual innocence, not mere legal insufficiency." *Hyman*, 927 F.3d at 657 (internal quotation marks and citations omitted). In clarifying what this standard requires, the Second Circuit explained:

> a reviewing court assessing the probability of actual innocence is not limited to the trial record. To the contrary, it "must consider all the evidence, old and new, incriminating and exculpatory," *House v. Bell*, 547 U.S. at 538 . . . (internal quotation marks omitted), and, in doing so, "is not bound by the rules of admissibility that would govern at trial," *Schlup v. Delo*, 513 U.S. at 327 . . . This is because, at the gateway stage of inquiry, a habeas court's task is not to identify trial error or to delineate the legal parameters of a possible new trial. It is to identify those cases in which a compelling showing of actual innocence would make it a manifest injustice to maintain conviction unless it was free of constitutional error. Thus, incriminating evidence obtained in the course of an unlawful search, or custodial admissions made in the absence of Miranda warnings, may well be inadmissible at trial. Nevertheless, such evidence is properly considered in assessing factual innocence, with the manner of procurement informing reliability and relevance and, therefore, weight.

---

[12] *Schlup* and *House* involved procedurally defaulted claims. *See McQuiggan*, 569 U.S. at 386. The Supreme Court in *McQuiggan* held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, the expiration of the statute of limitations." *Id.*

*Id.* at 658; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (citations omitted).

### 2. Discussion

In support of his claim of actual innocence, petitioner states that he has "present[ed] 'new,' or to be precise, 'newly presented' evidence, the evidence the district attorney's agent, the Ithaca Police (namely Detective Michael Gray), tampered with, erasing all evidence of police misconduct, in denying petitioner of his repeated requests for counsel and telephone calls." Aff. at 12; Reply at 1. Specifically, petitioner alleges that one hour from his video-taped confession was deleted and that, within that one hour of footage, law enforcement officials would have been shown ignoring petitioner's repeated requests for counsel and a phone call and engaging in an unconstitutional two-step interrogation procedure. Aff. at 12-13. Petitioner argues that his interrogation began while he was still incoherent from binging on drugs and alcohol, with officers suggesting incriminating scenarios to him until he confessed. *Id.*; Reply at 12. At this point, the recording picked up to show the officers giving petitioner his *Miranda* warnings and continuing to ask him questions, knowing what he had previously confessed to, and baiting him to confess again. Aff. at 13; Reply at 12. Petitioner asserts that one can tell the tape has been tampered with because the video produced by the People and used during trial lacks a time and date stamp. *Id.* at 17. Petitioner also states he was intimidated and threatened by the police until he consented to a strip search and DNA collection. *Id.* at 15.

Petitioner also argues that, prior to his plea hearing, he "was prescribed heavy psychotropic medications," and that, during his plea hearing, the "Judge . . . never asked petitioner if he was taking any medications[.]" Aff. at 18; *see also* Reply at 10 (arguing that

22

the psychotropic medications were designed to "discourage petitioner from proceeding to trial"). Petitioner contends that the Judge was also aware he suffered from a traumatic brain injury and had requested a consultation from a forensic psychologist; accordingly, the Judge should have made an on-the-record determination regarding his capacity in order for his guilty plea to be valid. Aff. at 18.

Petitioner's arguments are problematic for several reasons. First, assuming this evidence exists and is exactly as petitioner claims it to be, it would not be compelling enough to show actual innocence. In order to satisfy the actual innocence bar, "the new evidence [must] directly support[] petitioner's factual innocence by indicating either that he *did not* commit, or *could not* have committed, the crimes of conviction." *Hyman*, 927 F.3d at 665. The petitioners in *McQuiggan*, *House*, *Schlup*, and *Rivas* provided the courts with such evidence. *See McQuiggan*, 569 U.S. at 389 (affidavits pointing to another suspect); *House*, 547 U.S. at 540, 543-44 (new DNA evidence, testimony regarding possible contamination of evidence, and evidence regarding a different suspect indicating petitioner did not kill the victim, instead someone else had); *Schlup*, 513 U.S. at 307, 331 (sworn statements of eyewitnesses identifying different criminal participants and an affidavit providing petitioner with an alibi at the time of the crime, supporting defendant's innocence); *Rivas*, 687 F.3d at 528, 543-44 (affidavit from expert in forensic pathology identifying time of death of victim to be at a time when petitioner had an unchallenged alibi; thus petitioner could not have committed the murder). Here, petitioner did not.

Even crediting petitioner's allegations that law enforcement improperly questioned him, that he was coerced into providing DNA, and that his allocution was not as thorough as it could have been, this evidence fails to establish that petitioner did not commit the rape to

23

which he pled guilty or that he could not have committed the rape because he was elsewhere or someone else did it. Petitioner's arguments in support of actual innocence echo his claims for entitlement to habeas relief. This is insufficient to satisfy the demanding standard for actual innocence. In short, petitioner has not provided any evidence that he is "factually," as opposed to legally, innocent of the rape charge. *Bousley*, 523 U.S. at 623-24 ; *Perez*, 502 F. Supp. 2d at 306 ("To show actual innocence, a petitioner must prove that he is factually innocent, not by merely showing legal insufficiency.").

Further, even if petitioner made claims that he was factually innocent on the face of the petition and affidavit, the totality of the evidence would suggest otherwise. Petitioner's arguments that his confession and allocution should not be considered are irrelevant to the present analysis: a court conducting an actual innocence analysis shall consider all evidence, even that which was illegally admitted or obtained, with proper consideration for the weight of that evidence given relevance and reliability. *Hyman*, 927 F.3d at 658-59 (explaining Second Circuit interpretation of what evidence is permissible to review during course of actual innocence claim). When this Court considers all the relevant evidence, it is clear that petitioner has not made the showing necessary to pass through the narrow gateway for federal habeas review of his barred claims.

Here, petitioner unequivocally pled guilty to rape. SCR I at 1-13. The court asked if petitioner had adequate time to discuss the plea with his attorney, petitioner agreed that he had. *Id.* at 6. The court asked if petitioner had been made any promises or been coerced into the plea, petitioner indicated he had not. *Id.* The court emphasized that petitioner's case was on the eve of trial, and at that trial he would be able to enter evidence, present a defense, and cross-examine witnesses, as well as challenge any mistakes that the trial judge

24

may have made, petitioner stated he still wished to plead guilty. *Id.* at 7-8. The court told petitioner he would be severely limited in his ability to appeal his plea, the petitioner acknowledged understanding of that fact. *id.* at 8-9. Then the court spoke directly to petitioner's substance abuse on the night in question:

> THE COURT: [Petitioner], is it your position that you were under the influence of alcohol or otherwise impaired at the time this crime occurred?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: Are you aware that although alcohol is not a defense, a technical defense to this crime, that your attorney might be able to or would be entitled to raise alcohol, alcohol intoxication on your behalf at trial, and try to convince a jury that that impaired your ability such that you were unable to form the necessary intent to commit this crime? There may be other similar kinds of defenses available to you. Do you understand that by this plea you're waiving any of those kinds of challenges?
>
> [PETITIONER]: Yes, Your Honor.

*Id.* at 9; *see also id.* at 135 (pre-sentence investigation report indicating that any possible brain damage suffered by petitioner as the result of his prior injury is not offered "as an excuse for [petitioner's] egregious behavior, only as a further explanation for why he may have engaged in such aberrant actions."). Petitioner then went on to tell the court what happened on the night in question, specifically petitioner "forced [the victim from her apartment] in[to his] apartment and forced her to have intercourse with [him] . . . by intimidation," via threats with a knife. *Id.* at 10-12. Petitioner emphasized that the behavior was not consensual. *Id.* at 11-12.

During the sentencing hearing, petitioner again addressed the court, the victim, and

25

his family, stating that he would "like to apologize to the young woman who [he] brought this nightmare upon. . . [he could] not express in words how sorry [he was and e]very day [he] pray[ed] to God to ease [the victim's] pain," and would also "like to apologize to [his] family who has also been forced to endure this nightmare . . . hop[ing that] one day [his] children [could] forgive [him] for missing their childhood."  SCR I at 30-31.  Petitioner concluded by stating he was "ready to accept . . . responsibility for [his] actions."  *Id.* at 31.  The sentencing judge then commenced with his rationale, identifying petitioner's substance abuse and brain injury but stating that the injury was over sixteen years old and had never required treatment; therefore, blaming alcohol and his condition was unpersuasive.  *Id.* at 32-33.  Further, the court explained that it

> lost all sense of mercy . . . [when petitioner] acknowledg[ed] that at some point [he] came to [his] senses . . . that at some point in the morning . . . [petitioner] began talking to [the victim] about how terrible this was, how sorry [petitioner] were [*sic*], and under different circumstances what could be different, and then proceeded to take her upstairs and rape her and sodomize her more.

*Id.* at 33.  The court went further on to say that "[a]t some point the alcohol wore off.  At some point [petitioner] was aware of [his] behavior, and yet it continued."  *Id.* at 34.

Despite all of this, as the state court identified in its decision denying petitioner's 440 motion, petitioner's guilty plea still provided him with "a favorable result of a lesser sentence than permitted under the law" probably at least in part due to petitioner's counsel's action in "obtaining a detailed, independent sentencing report in an effort to present the court with mitigating factors to reduce the potential sentence."  SCR I at 321-22.

In sum, the totality of the evidence demonstrates that petitioner repeatedly admitted to and apologized for committing the underlying acts for which he was accused.  While no jury

26

was impaneled because petitioner pled guilty to a negotiated agreement and lesser sentence, to the extent such information was presented to a jury, this Court finds that it is more likely than not that reasonable jurors would find petitioner guilty beyond a reasonable doubt. Accordingly, petitioner's claims of actual innocence are insufficient to pass through the narrow gateway for federal review of a barred claim.[13]

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[14] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties, and serve an updated docket sheet upon petitioner, in accordance with the Local Rules.

---

[13] In addition, the delay in filing both petitioner's state and federal petitions undercuts petitioner's claim that he is actually innocent. *See McQuiggan*, 569 U.S. at 386-87; *see also id.* at 401 (reiterating that "untimeliness . . . does bear on the credibility of evidence proffered to show actual innocence."). In *McQuiggan*, the petitioner waited over eleven years after his conviction became final before filing his federal habeas petition. *Id.* at 389. Similarly, petitioner here filed his federal petition ten years after learning that no notice of appeal had been filed and his conviction had became final, and nine years after the expiration of the statute of limitations. *See* Pet. at 1; *see also* SCR I at 312 ("As far as w[a]iting 10 years to bring [the] 440 motion? It has taken that long to repeatedly request documents, file F.O.I.L. appeals, and Article 78 motions to try to obtain the documents withheld from [petitioner], that were requested in discovery.").

[14] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

**IT IS SO ORDERED.**

Dated: October 29, 2019
          Syracuse, NY

Brenda K. Sannes
U.S. District Judge